UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNIVERSAL MARINE MEDICAL SUPPLY INC.<br><br>                     Plaintiff,<br><br>            -against-<br><br>SELECT HEALTH SERVICES, LLC, WALDEMAR MUSIAL, MICHELE MUSIAL, and SUSAN GREEN<br><br>                              Defendants. | AMENDED COMPLAINT<br><br>Case No. 07-CV-5365 |

Plaintiff Universal Marine Medical Supply Company Inc. (referred to by name or "Universal"), as and for their Complaint against Defendants, hereby alleges as follows:

### OVERVIEW

1. This lawsuit, filed by Universal, a New York based pharmaceutical and medical supply company, which has been in business since 1977 and licensed by the United States Department of Justice, Drug Enforcement Administration ("DEA"), the State of New York Pharmacy Board and the New York State Department of Health Narcotic Division, see (www.ummsc.com), is an effort to curtail the Defendants' continued dissemination of false and misleading information to customers of Universal in an intentional, malicious, premeditated effort, scheme, and plan to damage the reputation of Universal by false statements and through innuendo – in reference to Julius R. Nasso, a principal of Universal- and reference to the alleged sale of anabolic steroids in the State of Louisiana, in an effort to "steal" their clients and irreparably damage Universal's reputation and business.

2. This case arises, *inter alia,* out of the willful tortious interference by the Defendants' of existing contracts and prospective economic relations between Universal and their long time clients along with claims for unfair competition, misrepresentation, defamation, trade disparagement and prima facie tort.

3. Defendants, in a blatant attempt to "anonymously" disparage Universal and "steal" Universal's clients, faxed articles on or about July 30, 2007, using unmarked fax cover sheets to Universal's clients. (Exhibit A)

4. Said articles contained false, outdated, and disparaging information.

## PARTIES

5. Plaintiff Universal Marine Medical Supply, Inc., a New York corporation located at 5824 Twelfth Avenue, Brooklyn, New York 11219, is a pharmaceutical and medical supply company which has been in business since 1977 and is licensed by the United States Department of Justice, Drug Enforcement Administration ("DEA"), the State of New York Pharmacy Board and the New York State Department of Health Narcotic Division, (see www.ummsc.com). One of its principals, Mr. Julius Nasso, is a citizen of the State of New York.

6. Defendant Select Health Services, LLC, which was previously incorporated as Fleet Medical Resources, is involved in the identical business as Universal and was formed in or about September, 1997, during which time its principals, WALDEMAR MUSIAL and MICHELE MUSIAL, were employed by Universal and is, upon information and belief, a Louisiana Limited Liability Corporation with a principal place of business at Elmwood Business Park, 1500 Edwards Ave, New Orleans

2

Louisiana 70123-5569 (see www.selecthealthservices.com), which transacts business

in New York in a systematic, continuous and substantial manner. Upon information

and belief, its principals are citizens of states other than New York as detailed

hereafter.

7. Defendant WALDEMAR MUSIAL is an individual who is a former employee of

Universal and a principal of SHS who, upon information and belief, is a citizen of

Newark, Delaware.

8. Defendant MICHELE MUSIAL is an individual who is a former employee of

Universal and a principal of SHS who, upon information and belief, is a citizen of

Newark, Delaware.

9. Defendant SUSAN GREEN is the General Manager of the Hot Springs, Arkansas

office of Select Health Services located at 251 Hobson Avenue, Hot Springs, AR

71913 and is a citizen, upon information and belief, of the State of Arkansas.

10. Defendants will be referred to by name or collectively referred to herein as

("Defendants").


## JURISDICTION AND VENUE

11. Jurisdiction and venue of this Court are invoked pursuant to 28 U.S.C. § 1332 and

1391(A), in that there is diversity of citizenship between the parties and the amount in

controversy exceeds $75,000, exclusive of interest and costs.

12. Venue is proper and convenient to this District, pursuant to 28 U.S.C. § 1391,

because this District is one in which a substantial part of the events or omissions

giving rise to Plaintiffs claims occurred, and Defendants transact substantial business

in this district, which is also the site of a substantial part of the events and operative nucleus of facts giving rise to the claims in the State of New York, and the acts complained of herein occurred in New York.

13. In addition, Defendants could have reasonably anticipated being hauled into Court in this District for the acts complained of herein, especially as to the tortious interference with contracts, unfair competition, defamation, trade disparagement and prima facie tort claims.

14. This Court has specific personal jurisdiction over the Defendants as they have purposely committed, within the state, the acts from which these claims arise and/or have committed unlawful acts outside New York, knowing and intending that such acts would cause injury within the state.

15. The Court also has jurisdiction over Defendants as they conduct continuous, systematic, and routine business within this state and county and derive revenue in New York.

16. Attempts to resolve this matter without court intervention have proved unsuccessful and the Plaintiff has no recourse but to seek court intervention.

## **BACKGROUND**

17. From on or about October or November, 1985, to December, 1997,  Defendant WALDEMAR MUSIAL was employed by Universal in the capacity as warehouse and purchasing manager and whose responsibilities included purchasing products and shipping those products to Universal's clients.

18. From February, 1993, to December, 1997, Defendant MICHELE MUSIAL was

4

employed by Universal in the capacity of manager of customer service and order

entry whose responsibilities included daily client communication regarding services

being rendered by Universal.

19. Beginning on or about December, 1997, Defendants Waldemar and Michele Musial

left the employ of Plaintiff and commenced doing business as Fleet Medical Supply,

subsequently known as Select Health Services, LLC, using confidential and

proprietary information belonging to the Plaintiff, including customer lists developed

by the Plaintiff over thirty (30) years in business.

20. From June 3, 2002 to the present, SHS's intentional, malicious, and premeditated

efforts, schemes, and plans to damage the reputation of Universal by false statements

via newspaper articles containing outdated and inaccurate information, through

innuendo, and third party communications to official boards,  have continued, despite

earlier communications to cease and a letter dated August 1, 2007 from one of

Universal's principals, Dr. Julius R. Nasso, to Defendants, (See Exhibit B),wherein

he stated:

> "Many of our clients that we mutually service ONCE
> AGAIN have brought it to my attention that you're sending
> them outdated false information and deliberately continuing
> to damage our reputation.  We have a number of clients in
> various cities that have been sending us the attached faxes,
> which you have been broadcasting." (Exhibit  B).

21. Upon information and belief, the following clients, have been contacted by

Defendants, while a number of them have ceased doing business with Universal as a

result of the communications and interference reflected and detailed herein:

    a.  Sealift Incorporated 68 West Main Street, Oyster Bay, NY 11771;
    b.  Apex Marine Ship 140 Franklin Street, New York, NY 10013;
    c.  SUNY Maritime College 6 Pennyfield Avenue, Bronx, NY 10465-

4198;

 d. Ruggiero & Ogle Motor Ship 1209 Bay Street, Staten Island, NY 10305;

 e. Argo Marine Incorporated 140 Franklin St., New York, NY 10013;

 f. Weaver Marine Svcs. Ltd. 1200 South Avenue, Ste. 206, Staten Island, NY 10314-3403;

 g. General Marine Services 3406 Amboy Road, Staten Island, NY 10308;

 h. Zim Container Services 1110 South Ave., Ste. 405, Staten Island, NY 10314;

 i. Liberty Maritime, Corp. 1979 Marcus Ave., St. 200, Lake Success, NY 11042;

 j. Roymar Ship Mgmt 455 Central Park Ave., Ste. 301, Scarsdale, NY 10583;

 k. Metro Marine, Corp. 139 Fulton St., Ste. 721, New York, NY 10038;

 l. E-Ships, Inc. One Whitehall Street, 19th Floor, New York, NY 10004;

 m. Barwill Agencies 210 Edge Water Street, Staten Island, NY 10305;

 n. MK Companies 2512 21st. Street, Astoria, NY 11102;

 o. Seaboard Ship Management, 1551 Sawgrass Corp. Parkway, Suite 200, Sunrise, FL 33323;

 p. Seabulk Int'l 2200 Eller Drive, Fort Lauderdale, FL 33316;

 q. Liberty Marine, 2403 Corbett Street, Jacksonville, FL 32204;

 r. Hellenic Ship, 1016 Channel Side Drive, Tampa, FL 33602;

 s. Hall's Ship, 4444 Navigation Blvd., Houston, TX 77011;

 t. Ravenscroft Shipping, 3251 Ponce De Leon Blvd, Coral Gables, FL 33134;

 u. LMS (Lash) Ship Management, P.O. BOX 2147, Mobile, AL 36652;

 v. Trans Ocean Marine, 9407 Arboreal Court, River Ridge, LA 70123;

 w. East Coast Ship Supply 212-Durham Ave., Metuchan, NJ 08840;

 x. Wrist Management 1465-East Sam Houston Pkwy. South, Suite 150, Pasadena, TX. 77503.

22. The information sent to third parties by Defendants Waldemar and Michele Musial,

former employees of Universal, Susan Green, and Select Health Services, LLC

("SHS"), a competitor of Universal, contains false and misleading factual statements,

implications and/or references to Universal and one of its principals, Dr. Julius R.

Nasso[1], and his son, as detailed hereafter.[2]

23. In addition, Defendants also contacted the Louisiana Board of Wholesale Drug
Distributors ("Board") and falsely alleged that Universal was selling anabolic steroids
in the state of Louisiana.

24. Said false information resulted in a letter being written by Michael A. Tomino Jr., an
attorney for the Louisiana Board of Wholesale Drug Distributors to Mr. Avallon of
Universal Marine Medical Supply Co. (Exhibit C)

25. In this letter, Mr. Tomino states that Universal is allegedly selling anabolic steroids in
the state of Louisiana ordering Universal to, "...cease and desist any illegal activity
immediately."

26. However, as can be attested to by William P. McMullan – a former law enforcement
professional with the DEA (See Exhibit D for a full resume), that his firm Global
Resolutions Inc. ("GRI"), for the past twelve years, has reviewed all narcotic
transactions executed by Universal to insure that Universal is in compliance with the
U.S. Code of Federal Regulations pertaining to controlled substances. GRI conducts
monthly unannounced inspections of Universal and, in his experience with Universal,
has never been aware of any anabolic steroids being stored, distributed, or purchased.

---

[1] Nasso has been active in the motion picture business since 1981. During this time, he has been
involved in the production of twelve (12) films, most of which starred his long-time friend and
partner, Steven Seagal. The films produced and distributed include such commercial successes as
"Under Siege," "Out for Justice," "Marked for Death," "Hard to Kill," and "Under Siege 2" and
have generated over $1.1 billion ($1,100,000.00) in revenues. SNP, a company formed by Mr.
Seagal and Mr. Nasso engaged, among other things, in the production and marketing of both Mr.
Seagal's films and numerous other lower-to-midlevel budget productions. Recently, Mr. Nasso
has been involved in the distribution of "Enigma", and produced "One Eyed King", "U-Boat",
"NARC" and "The Poet".

[2] Defendants' reliance on a June, 2002 newspaper article regarding the arrest of Julius R. Nasso
while completely ignoring the February 17, 2004 public transcripts of Mr. Nasso's sentencing is
further proof of malice. (Exhibit B)

(Exhibit E)

27. As further independent proof of this statement, Universal, in the last twelve years, has been routinely inspected by DEA Compliance Investigators on four occasions.

28. The most recent inspection by DEA was in July of 2007.

29. This inspection showed zero infractions of any kind by Universal.

30. Based on his past experience with the DEA and his in depth knowledge of Universal's business practices relative to controlled substances, he would attest that these accusations were false.

31. The Defendants knew that the information they conveyed to third parties was false or were acting in reckless disregard of the truth or falsity, and disseminated the materials for the sole purpose of irreparably damaging Plaintiff's business and reputation thereby committing an intentional tort and engaging in unfair trade practices and unfair competition.

32. The statements and/or implications referred to herein were made with knowledge of their falsity or in reckless disregard of the truth or falsity of the statements (known as "actual malice").

33. Therefore, this action is not an attempt to deter or punish Defendants for exercising their political or legal rights and it has nothing to do with Defendants' right of petition or free speech under the Constitutions of the United States, New York and/or in connection with a public issue.

34. The defamatory statements were made not only with actual malice, but also for the purpose of irreparably damaging Plaintiff's reputation, good will and business.

35. The statements made in outdated newspaper articles regarding Mr. Nasso being either

8

a "member" or "associate" of the Gambino crime family which the Defendants deliberately and maliciously sent via fax to Universal's customers, were false and inaccurate as evidenced by Federal Judge Block of the United States District Court of the Eastern District of New York, and his statements were a matter of public record accessible to the Defendants.

36. In fact, during Mr. Nasso's sentencing on February 17, 2004, District Judge Block stated that

> " . . Julius Nasso was a profound businessperson. He has been involved in the entertainment business for many, many years. By his own admission, he has produced four films subsequent to the Steven Seagal split up. He had a longstanding relationship with Seagal. He was the engine behind his success in terms of the amount of movies that were produced…"( emphasis added).

37. Furthermore, the Court indicated that nothing in Mr. Nasso's background, history, or personal life indicated that the behavior which was the subject of the proceedings was anything but aberrational.[3] Judge Block continued:

> "I will say this; I don't recall any hard evidence that would satisfy the Court that if I had to rule on the issue factually that Jules Nasso is an associate of organized crime. So, you have that statement by me."… "he's (Mr. Nasso) has been law abiding. He's contributed his entire life to numerous charities. He's raised millions of dollars for charities.
>
> "There's nothing at all that indicates in this person's career, his background, his history, his personal life, that his behavior was anything but aberrational under the circumstances.…[T]his is a singular decision made pretty

---

[3] When we look at 5k2.20 of the Federal Sentencing Guidelines, which informs the Court about how to view aberrant behavior departure, the commentary instructs the Court that aberrant behavior means a single criminal occurrence or single criminal transaction that was committed without significant planning, was of limited duration and represents a marked deviation by the Defendant from an otherwise law abiding life."

hastily, totally at odds with his lifestyle, with his other good deeds and I think it really smacks of aberrant behavior more than anything else....

"[I]t would be comfortable in downwardly departing on the grounds of aberrant behavior in this particular case. "The Court is not unmindful of the factors and circumstances involved in Mr. Nasso's criminal activities because I sat for weeks hearing their names being bandied about, day in and day out. I think the Court is in a very good position to decide, based upon what I've heard throughout the trial plus looking at all of those submissions, whether it is comfortable with that proposed plea agreement. And it decidedly is comfortable.

"There is a substantial record that's been presented to the Court in the form of documentation of severe and acute anxiety and other disorders that Mr. Julius Nasso was experiencing at the exact same time of the offense.

"And that justifies, in the government's view, a departure under the diminishment of capacity grounds. He was basically experiencing nervous breakdowns. He was under the care of numerous physicians. He was on medication during that time. And that jives with the trial testimony we had in Court.

"The government has agreed that the year and a day sentence and the fine are sufficient punishment in light of the acute nature of that psychological trauma that Mr. Nasso was experiencing. It was supported in the evidence that we presented at trial.

"We listened to the tapes that we had from the trial in which it was discussed that Mr. Nasso was in an extreme deep depression during the time. And we think that those medical issues were a significant contributing factor to the change in his conduct from a law abiding business man to someone that fell in with the wrong crowd and made a terrible mistake..."

38. In any event, these activities were separate and apart from the business of Universal.

## FIRST CLAIM
## PRIMA FACIE TORT BASED ON THE JUNE 5, 2002 NEWSDAY ARTICLE
### (exhibit f)

39. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 38 as set forth at length herein.

40. The Defendants intentionally targeted their extreme, premeditated, intentional, malicious, outrageous conduct to "steal" some of Universal's clients. (Exhibit I)

41. However, for a large number of Universal's other clients, the Defendants had no reasonable expectation that these customers would patronize SHS in response to the Defendants' tortious conduct, and their sole motivation was to intentionally injure the Plaintiff's reputation and business without any justification or excuse.

42. As such, the Plaintiff suffered special damages as a result in the loss of existing clients to the Defendants as a result of the Defendants' actions.

## SECOND CLAIM
## DEFAMATION AS TO THE JUNE 5, 2002 NEWSDAY ARTICLE

43. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 as it is fully set forth at length herein.

44. Upon information and belief, as will be learned in discovery, Defendants knowingly, willfully, and maliciously stated and disseminated (published) information that Plaintiff was a member or associate of the Gambino crime family.

45. Said statement was false and known to be false by Defendants and was faxed to clients of Universal in reckless disregard of its truth or falsity.

46. As a result of such statements being disseminated by fax to clients of Universal, the Plaintiff has suffered injuries.

47. By reason of the foregoing false and defamatory faxes willfully and maliciously sent by the Defendants, Plaintiff has been injured in its good name, fame and credit, and brought into public disgrace, ridicule, aversion and infamy amongst his neighbors, members and community.

### THIRD CLAIM
### TORTIOUS INTERFERENCE WITH A CONTRACT BASED ON THE JUNE 5, 2002 NEWSDAY ARTICLE

48. Plaintiff repeats and realleges paragraphs 1 through 47 of this Complaint as it is fully set forth at length herein.

49. Defendants had full knowledge of the existence of a valid contract between Universal and its clients.

50. Upon information and belief, Defendants improperly and intentionally induced the clients to breach their agreements with Universal by faxing Universal's clients a copy of the Newsday article, with the intention of implying that one of Universal's principals, Dr. Julies R. Nasso, was a Gambino crime family associate.

51. As a result, Plaintiff has suffered damages for lost earnings.

### FOURTH CLAIM
### TORTIOUS INTERFERENCE
### WITH PROSPECTIVE ECONOMIC RELATIONS BASED ON THE JUNE 5, 2002 NEWSDAY ARTICLE

52. Plaintiff repeats and realleges paragraphs 1 through 51 of this Complaint as it is fully set forth at length herein.

53. Upon information and belief, Defendants willfully and by improper means, with full knowledge of Plaintiff's economic expectancy, caused Universal clients to terminate their business relationships with the Plaintiff, thus interfering with the economic

expectancy that the Plaintiff had in the continued business with its clients.

54. As a result, Universal suffered and continues to suffer damages.

## FIFTH CLAIM
## DEFAMATION AND DISPARAGEMENT BASED ON THE JUNE 5, 2002
## NEWSDAY ARTICLE

55. Plaintiff repeats and realleges each and every allegation contained in paragraph 1

through 54 as it is fully set forth at length herein.

56. Defendants, their agents, employees or representatives knowingly, willfully and

maliciously made statements that were false and known to be false about Universal

and its principals, to third parties, including Universal's clients, thus interfering,

through the use of improper means, with Universal's opportunity to enter into

contracts with said third parties.

57. But for Defendants' intentional conduct, the Plaintiff would have entered into said

contracts.

58. By reason of the foregoing false and defamatory statements, willfully and maliciously

made by Defendants, Universal and its principals have been injured in their good

name and Universal has incurred damages in an amount to be proven at trial but not

less than $ 10,000,000.

## SIXTH CLAIM
## MISREPRESENTATION BASED ON THE JUNE 5, 2002 NEWSDAY ARTICLE

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 58 as it is fully set forth at length herein.

60. Defendants willfully, maliciously and fraudulently made false and misleading

representations to Universal's clients as indicated herein.

61. Defendants knew those facts to be false and misleading yet communicated them to Universal's clients.

62. Plaintiff has suffered damages as a consequence.

### SEVENTH CLAIM
### PRIMA FACIE TORT BASED DEFENDANTS' LETTER TO THE LOUISIANA BOARD

63. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 62 as set forth at length herein.

64. The Defendants intentionally targeted their extreme, premeditated, intentional, malicious, outrageous conduct to "steal" some of Universal's clients. (Exhibit I)

65. However, for Universal's other clients, the Defendants had no reasonable expectation that these customers would patronize SHS in response to the Defendants' tortious conduct, and their sole motivation was to intentionally injure the Plaintiff's reputation and business without any justification or excuse.

66. As such, the Plaintiff suffered special damages as a result in the loss of existing clients to the Defendants as a result of the Defendants' actions. Punitive damages are also justified and should be awarded.

### EIGHTH CLAIM
### DEFAMATION AS TO DEFENDANTS' LETTER TO THE LOUISIANA BOARD

67. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 66 as it is fully set forth at length herein.

68. Upon information and belief, as will be learned in discovery, Defendants knowingly,

14

willfully, and maliciously stated and disseminated (published) information that Plaintiff was a member or associate of the Gambino crime family and involved in selling illegal steroids.

69. Said statement was false and known to be false by Defendants and was faxed to the Louisiana Board in reckless disregard of its truth or falsity.

70. As a result of such statements being disseminated by fax to the Louisiana Board, the Plaintiff has suffered injuries.

71. By reason of the foregoing false and defamatory letter and articles willfully and maliciously sent by the Defendants, Plaintiff has been injured in its good name, fame and credit, and brought into public disgrace, ridicule, aversion and infamy amongst his neighbors, members and community.

## NINTH CLAIM
## TORTIOUS INTERFERENCE WITH A CONTRACT BASED ON DEFENDANTS' LETTER TO THE LOUISIANA BOARD

72. Plaintiff repeats and realleges paragraphs 1 through 71 of this Complaint as it is fully set forth at length herein.

73. Defendants had full knowledge of the existence of a valid contract between Universal and its clients.

74. Upon information and belief, Defendants improperly and intentionally induced the clients to breach their agreements with Universal by faxing the Louisiana Board a copy of the defamatory and accusatory articles about Universal's principal, Dr. Julius R. Nasso, with the intention of implying that Mr. Nasso was a Gambino crime family associate and involved in the illegal sale of steroids.

75. As a result, Plaintiff has suffered damages for lost earnings.

## TENTH CLAIM
## TORTIOUS INTERFERENCE
## WITH PROSPECTIVE ECONOMIC RELATIONS BASED ON
## DEFENDANTS' LETTER TO THE LOUISIANA BOARD

76. Plaintiff repeats and realleges paragraphs 1 through 75 of this Complaint as it is fully set forth at length herein.

77. Upon information and belief, Defendants willfully and by improper means, with full knowledge of Plaintiff's economic expectancy, caused Universal clients to terminate their business relationships with the Plaintiff, thus interfering with the economic expectancy that the Plaintiff had in the continued business with its clients.

78. As a result, Universal suffered and continues to suffer damages.

## ELEVENTH CLAIM
## DEFAMATION AND DISPARAGEMENT BASED ON DEFENDANTS'
## LETTER TO THE LOUISIANA BOARD

79. Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 78 as it is fully set forth at length herein.

80. Defendants, their agents, employees or representatives knowingly, willfully and maliciously made statements that were false and known to be false about Universal and its principals, to third parties, including the Louisiana Board, thus interfering, through the use of improper means, with Universal's opportunity to enter into contracts with third parties.

81. But for Defendants' intentional conduct, the Plaintiff would have entered into said contracts.

82. By reason of the foregoing false and defamatory statements, willfully and maliciously made by Defendants, Universal and its principals have been injured in their good

name and Universal has incurred damages in an amount to be proven at trial but not less than $ 10,000,000.

## TWELFTH CLAIM
## MISREPRESENTATION BASED ON THE DEFENDANTS' LETTER TO THE LOUISIANA BOARD

83. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 82 as it is fully set forth at length herein.

84. Defendants willfully, maliciously and fraudulently made false and misleading representations to Universal's clients as indicated herein.

85. Defendants knew those facts to be false and misleading yet communicated them to Universal's clients.

86. Plaintiff has suffered damages as a consequence.

## THIRTEENTH CLAIM
## PRIMA FACIE TORT BASED ON THE OCTOBER 18, 2007 STATEN ISLAND ADVANCE ARTICLE (EXHIBIT G)

87. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 86 as set forth at length herein.

88. The Defendants intentionally targeted their extreme, premeditated, intentional, malicious, outrageous conduct to "steal" some of Universal's clients. (Exhibit I)

89. However, for Universal's other clients, the Defendants had no reasonable expectation that these customers would patronize SHS in response to the Defendants' tortious conduct, and their sole motivation was to intentionally injure the Plaintiff's reputation and business without any justification or excuse.

90. As such, the Plaintiff suffered special damages as a result in the loss of existing clients to the Defendants as a result of the Defendants' actions. Punitive damages are

also justified and should be awarded.

## FOURTEENTH CLAIM
## DEFAMATION BASED ON THE OCTOBER 18, 2007 STATEN ISLAND ADVANCE ARTICLE

91. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 90 as it is fully set forth at length herein.

92. Upon information and belief, as will be learned in discovery, Defendants knowingly, willfully, and maliciously stated and disseminated (published) information that Plaintiff was a member or associate of the Gambino crime family and involved in selling illegal steroids.

93. Said statement was false and known to be false by Defendants and was faxed to Universal's clients in reckless disregard of its truth or falsity.

94. As a result of such statements being disseminated by fax to Universal's clients, the Plaintiff has suffered injuries.

95. By reason of the foregoing false and defamatory letter and articles willfully and maliciously sent by the Defendants, Plaintiff has been injured in its good name, fame and credit, and brought into public disgrace, ridicule, aversion and infamy amongst his neighbors, members and community.

## FIFTEENTH CLAIM
## TORTIOUS INTERFERENCE WITH A CONTRACT BASED ON THE OCTOBER 18, 2007 STATEN ISLAND ADVANCE ARTICLE

96. Plaintiff repeats and realleges paragraphs 1 through 95 of this Complaint as it is fully set forth at length herein.

97. Defendants had full knowledge of the existence of a valid contract between Universal and its clients.

98. Upon information and belief, Defendants improperly and intentionally induced the clients to breach their agreements with Universal by faxing Universal's clients a copy of the defamatory and accusatory articles about Universal's principal, Dr. Julius R. Nasso, with the intention of implying that Mr. Nasso was a Gambino crime family associate and involved in the illegal sale of steroids.

99. As a result thereof, Plaintiff has suffered damages.

## SIXTEENTH CLAIM
## TORTIOUS INTERFERENCE
## WITH PROSPECTIVE ECONOMIC RELATIONS BASED ON THE
## OCTOBER 18, 2007 STATEN ISLAND ADVANCE ARTICLE

100. Plaintiff repeats and realleges paragraphs 1 through 99 of this Complaint as it is fully set forth at length herein.

101. Upon information and belief, Defendants willfully and by improper means, with full knowledge of Plaintiff's economic expectancy, caused Universal clients to terminate their business relationships with the Plaintiff, thus interfering with the economic expectancy that the Plaintiff had in the continued business with its clients.

102. As a result thereof, Universal suffered and continues to suffer damages.

## SEVENTEENTH CLAIM
## DEFAMATION AND DISPARAGEMENT BASED ON THE OCTOBER 18,
## 2007 STATEN ISLAND ADVANCE ARTICLE

103. Plaintiff repeats and realleges each and every allegation contained in paragraph 1

through 102 as it is fully set forth at length herein.

104. Defendants, their agents, employees or representatives knowingly, willfully and maliciously made statements that were false and known to be false about Universal and its principals, to third parties, thus interfering, through the use of improper means, with Universal's opportunity to enter into contracts with third parties.

105. But for Defendants' intentional conduct, the Plaintiff would have entered into said contracts.

106. By reason of the foregoing false and defamatory statements, willfully and maliciously made by Defendants, Universal and its principals have been injured in their good name and Universal has incurred damages in an amount to be proven at trial but not less than $ 10,000,000.

## EIGHTEENTH CLAIM
## MISREPRESENTATION BASED ON THE OCTOBER 18, 2007 STATEN ISLAND ADVANCE ARTICLE

107. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 106 as it is fully set forth at length herein.

108. Defendants willfully, maliciously and fraudulently made false and misleading representations to Universal's clients as indicated herein.

109. Defendants knew those facts to be false and misleading yet communicated them to Universal's clients.

110. Plaintiff has suffered damages as a consequence.

## NINTEENTH CLAIM
## PRIMA FACIE TORT BASED ON THE OCTOBER 17, 2007 STATEN ISLAND ADVANCE ARTICLE (EXHIBIT H)

111. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 110 as set forth at length herein.

112. The Defendants intentionally targeted their extreme, premeditated, intentional, malicious, outrageous conduct to "steal" some of Universal's clients. (Exhibit I)

113. However, for Universal's other clients, the Defendants had no reasonable expectation that these customers would patronize SHS in response to the Defendants' tortious conduct, and their sole motivation was to intentionally injure the Plaintiff's reputation and business without any justification or excuse.

114. As such, the Plaintiff suffered special damages as a result in the loss of existing clients to the Defendants as a result of the Defendants' actions. Punitive damages are also justified and should be awarded.

## TWENTIETH CLAIM
## DEFAMATION BASED ON THE OCTOBER 17, 2007 STATEN ISLAND ADVANCE ARTICLE

115. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 114 as it is fully set forth at length herein.

116. Upon information and belief, as will be learned in discovery, Defendants knowingly, willfully, and maliciously stated and disseminated (published) information that Plaintiff was a member or associate of the Gambino crime family and involved in selling illegal steroids.

117. Said statement was false and known to be false by Defendants and was faxed to Universal's clients in reckless disregard of its truth or falsity.

118. As a result of such statements being disseminated by fax to Universal's clients, the Plaintiff has suffered injuries.

21

119. By reason of the foregoing false and defamatory letter and articles willfully and maliciously sent by the Defendants, Plaintiff has been injured in its good name, fame and credit, and brought into public disgrace, ridicule, aversion and infamy amongst his neighbors, members and community.

## TWENTY-FIRST CLAIM
## TORTIOUS INTERFERENCE WITH A CONTRACT BASED ON THE
## OCTOBER 17, 2007 STATEN ISLAND ADVANCE ARTICLE

120. Plaintiff repeats and realleges paragraphs 1 through 119 of this Complaint as it is fully set forth at length herein.

121. Defendants had full knowledge of the existence of a valid contract between Universal and its clients.

122. Upon information and belief, Defendants improperly and intentionally induced the clients to breach their agreements with Universal by faxing Universal's clients a copy of the defamatory and accusatory article about Universal's principal, Dr. Julius R. Nasso, with the intention of implying that Mr. Nasso was a Gambino crime family associate and involved in the illegal sale of steroids.

123. As a result, Plaintiff has suffered damages for lost earnings.

## TWENTY-SECOND CLAIM
## TORTIOUS INTERFERENCE
## WITH PROSPECTIVE ECONOMIC RELATIONS BASED ON THE
## OCTOBER 17, 2007 STATEN ISLAND ADVANCE ARTICLE

124. Plaintiff repeats and realleges paragraphs 1 through 123 of this Complaint as it is fully set forth at length herein.

125. Upon information and belief, Defendants willfully and by improper means, with full knowledge of Plaintiff's economic expectancy, caused Universal clients to terminate

their business relationships with the Plaintiff, thus interfering with the economic

expectancy that the Plaintiff had in the continued business with its clients.

126. As a result, Universal suffered and continues to suffer damages.

## TWENTY-THIRD CLAIM
## DEFAMATION AND DISPARAGEMENT BASED ON THE OCTOBER 17, 2007 STATEN ISLAND ADVANCE ARTICLE

127. Plaintiff repeats and realleges each and every allegation contained in paragraph 1

through 126 as it is fully set forth at length herein.

128. Defendants, their agents, employees or representatives knowingly, willfully and

maliciously made statements that were false and known to be false about Universal

and its principals, to third parties, thus interfering, through the use of improper

means, with Universal's opportunity to enter into contracts with third parties.

129. But for Defendants' intentional conduct, the Plaintiff would have entered into said

contracts.

130. By reason of the foregoing false and defamatory statements, willfully and

maliciously made by Defendants, Universal and its principals have been injured in

their good name and Universal has incurred damages in an amount to be proven at

trial but not less than $ 10,000,000.

## TWENTY-FOURTH CLAIM
## MISREPRESENTATION BASED ON THE OCTOBER 17, 2007 STATEN ISLAND ADVANCE ARTICLE

131. Plaintiff repeats and realleges each and every allegation contained in paragraphs

1 through 130 as it is fully set forth at length herein.

132. Defendants willfully, maliciously and fraudulently made false and misleading

23

representations to Universal's clients as indicated herein.

133. Defendants knew those facts to be false and misleading yet communicated them to Universal's clients.

134. Plaintiff has suffered damages as a consequence.

## TWENTY-FIFTH CLAIM
## UNFAIR COMPETITION

135. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 134 hereof as it is fully set forth at length herein.

136. Defendants committed acts, previously referred to herein, that injured the good will and business reputation of the Plaintiff.

137. Through the improper use of Universal's customer lists, the Defendants disseminated false and disparaging information to Universal's existing customers with the intention of unfairly and improperly competing with Universal.

138. Upon information and belief, Defendants engaged in those acts in combination with false disparagement of the Plaintiffs in order to compete unfairly with Plaintiffs.

139. Defendants, individually and as a whole, committed the acts herein maliciously, fraudulently, oppressively, and despicably, with the wrongful intention of injuring Plaintiffs, with an improper and evil motive amounting to malice, and in conscious disregard of Plaintiffs' rights.

140. Plaintiff is thus entitled to recover punitive damages from Defendants, individually and as a whole, in an amount according to proof.

WHEREFORE, Plaintiff demands the following relief against all Defendants , jointly and severally: Judgment on each of the claims of this

Complaint against the Defendants in the amount of $10,000,000.00 including

punitive damages, interest, cost and disbursements, and for such further relief as

this Court deems just and proper.

Dated: New York, New York
      January 3, 2008

HANTMAN & ASSOCIATES
www.hantmanlaw.com

By: Robert J. Hantman, Esq. (3947)
www.Hantmanlaw.com
Attorney for Plaintiff
1414 Avenue of the Americas Suite 406
New York, New York 10019
(212) 684 3933